(C. D. 504)

H. A. Whitacre, Inc., v. United States

United States Customs Court, Third Division

(Decided May 28, 1941)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before Cline and Keefe, Judges

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover the duty assessed on four pieces of marble statuary which were assessed with duty at the rate of 20 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930. The plaintiff claims that the merchandise is free of duty under the provisions of paragraph 1807. The pertinent parts of those paragraphs read as follows:

Par. 1547 (a). Works of art, including * * * (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * * all the foregoing not specially provided for, 20 per centum ad valorem.

Par. 1807. * * *, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional

productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; * * *

The first witness called by the plaintiff was Mr. Walter Erkes who is an architect for the Inglewood Park Mausoleum Co. He testified that he entered into a contract with an artist, Mr. Casper Gruenfeld, to design statues representing four allegorical subjects; that Mr. Gruenfeld produced four models in plaster of paris in half-size under that contract; that he also entered into a contract with W. A. Whitacre, Inc., of New York for the production of the statues in carrara marble in full-size; that after the models completed by Mr. Gruenfeld were examined by him, they were shipped to Italy where the imported articles were produced; that the importation consisted of four pieces of statuary, 6 feet 6 inches in height, composed of carrara marble, and, except for size, they faithfully reproduced the plaster of paris models; that after importation they were installed in the mausoleum at Inglewood Memorial Park and they enhanced the beauty thereof. On cross-examination the witness testified that he suggested the names which he wanted the statues to represent; that while he suggested ideas to Mr. Gruenfeld, the principal conception was by Mr. Gruenfeld.

The next witness called by the plaintiff was Mr. Casper Gruenfeld, an artist whose qualifications were admitted by counsel for the defendant. He testified that he executed the original models in plaster of paris to represent the allegorical subjects "Eternity," "Devotion," "Reverence," and "Loved Ones" suggested by the architect, Mr. Walter Erkes; that the conceptions were original with him; that he first made small models about 8 inches high and then made the models in half-size; that he saw the full-sized marble statues upon importation and they fully represent his half-size models. On cross-examination he testified that Mr. Erkes possibly made various minor suggestions as to carrying out the idea but the creation of the models was solely his own personal conception.

Photographs of the models were introduced in evidence and marked exhibit 3.

An examination of the record shows that all of the evidence introduced relates to the production of the plaster of paris models and no testimony was offered in regard to the production of the marble statues, the subject of the importation. Counsel for the plaintiff sums up the issue in his brief as follows:

Inasmuch as the half-size models were the professional products of a qualified sculptor, and the finished statues were admittedly works of art, the only question to be determined is whether (a) the conception was original with the sculptor and (b) the method of producing the statues prevents their free entry as originals.

The plaintiff cites *Baldwin Shipping Co.* v. *United States*, 12 Ct. Cust. Appls. 128, T. D. 40051, in support of his contention that the statues in this case should be classified as original statuary. In that case photographs of persons were sent abroad and sculptors in Italy produced marble statues for monumental purposes in cemeteries. The sculptors in Italy first produced models in clay and photographs of the models were sent to the importers in the United States for approval. In one instance the importer suggested a change in the arrangement of the hair on the model but two other models were accepted without change. Marble statues were then created in representation of the models. The court held that the imported statues were originals and were free of duty under paragraph 652 of the Tariff Act of 1913.

In the case of *H. A. Whitacre, Inc.* v. *United States*, 52 Treas. Dec. 535, Abstract 3635, the court considered the question of whether mortuary statuary designed from a photograph was classifiable as original sculpture. In overruling the protest, the court said:

It is not shown by the testimony that the statue was the work of a professional sculptor of good repute.

The record in this case has the same defect. There is nothing to show whether the imported marble statues were executed by professional artists or sculptors.

Counsel for the plaintiff makes the further claim that if the imported statues are not originals, they are first or second replicas or reproductions, and, as such, are free of duty under paragraph 1807. This contention is not supported by the evidence because there is no testimony in the record tending to show that the imported statues were the first or second productions from the plaster of paris models. For all that appears in the record, the person who made the marble statues may have produced a dozen duplicates. In this connection the decision in *William Baumgarten & Co.* v. *United States*, 29 Treas. Dec. 67, T. D. 35597, G. A. 7760, may be cited as authority adverse to the plaintiff's contention. The merchandise in that case consisted of a marble fountain which was copied by modern artists from a marble fountain produced in the sixteenth century. The plaintiff claimed that the fountain was free of duty as an original sculpture or as a replica thereof under paragraph 652 of the Tariff Act of 1913. In overruling the protest, the court said on this point:

We think a replica must be held to be a duplicate of the original, produced by the same artist. It must be identical in material, size, and detail. A replica in our judgment is distinguished from a copy in that the latter may be made by a different person. In the view taken by Congress "copy" is evidently a broader term, including such articles as were not intended to be admitted free under paragraph 652. The word "reproductions" as used in paragraph 652 we think is intended to amplify the expression and must be held to cover the same class of

articles as those described as "replicas". It is true a replica may be a copy, or a reproduction may be a copy, within the broader meaning of that word; but it evidently was not intended by Congress to include copies in paragraph 652.

The record in this case clearly establishes that the artist who made the plaster of paris models did not produce the marble statues and that the marble sculptures and the models are not identical in material or size. Therefore, under the ruling announced in the above excerpt, it cannot be held that the marble statues herein involved are first or second replicas or reproductions.

Counsel for the defendant cites *Mandel Bros., Inc.* v. *United States,* 68 Treas. Dec. 1087, Abstract 32334, and *Seitz Memorial Co.* v. *United States,* 69 Treas. Dec. 1268, Abstract 33956, in support of his contention that the imported statues are not originals. In those cases marble sculptures were produced abroad from designs made in the United States. The court held that, as the sculptures were not the original conception of the artists who produced them, they were not free of duty as originals.

In harmony with the authorities above cited, we find that the statues herein involved are not original sculptures or statuary and we hold that they were properly classified by the collector. The protest is overruled. Judgment will be entered for the defendant.